# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| LARRON R. BRUCE, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | CV417-049 |
| ) | CR415-204 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **REPORT AND RECOMMENDATION**

Indicted on multiple counts of drug-trafficking charges, Larron Bruce pled guilty to one count of conspiracy to possess and to manufacture in violation of 21 U.S.C. § 846. Docs. 1 (indictment), 49 (plea agreement).[1] His sentence was affirmed on appeal. *United States v. Bruce*, 665 F. App'x 852, 853 (11th Cir. 2016). He now seeks to vacate his sentence under theories of ineffective assistance of counsel, court errors, and lack of evidence to convict. Doc. 152. The Government's motion to dismiss the § 2255 motion, doc. 158, is unopposed.

---

[1] The Court is citing to the criminal docket in CR415-204 unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

I.   BACKGROUND

Bruce was indicted for his role in a crack cocaine manufacture and distribution conspiracy. Doc. 1. He pled guilty to one count of conspiracy to possess with intent to distribute (cocaine and cocaine base) and to manufacture (cocaine base). Doc. 47 at 1. By signing his plea agreement, he admitted the essential elements of the charge and "agree[d] that he [wa]s, in fact, guilty of these offenses" and that the Government "could prove each element of every offense beyond a reasonable doubt." *Id.* at 1-2.

Movant further agreed that he could be subject to up to 20 years' imprisonment with at least 3 years of supervised release, a hefty fine, and a $100 special assessment. Doc. 47 at 3. Finally, he affirmed his understanding that at sentencing the Court was "obligated" to use the Sentencing Guidelines to calculate his sentencing range and that the calculation would be "based on all of [Bruce]'s relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the facts underlying the particular Count to which [he] is pleading guilty." *Id.*

At the Rule 11 hearing, Bruce testified that he understood a guilty plea admitted the charge against him, chiefly that he and his

2

coconspirators "being aided and abetted by each other . . . did knowingly and intentionally combine, conspire, confederate and agree with each other . . . to possess with intent to distribute a mixture or substance containing a detectable amount of cocaine and cocaine base . . . and to manufacture cocaine base[.]" Doc. 86 at 11 & 14.  He affirmed that he understood that "even though the government is dismissing Counts 7 and 8 of the indictment, according to the Advisory Sentencing Guidelines, the charges against [him] in those counts may still play a part in the calculation of the sentence."  *Id.* at 15-16; *see also id.* at 17 (affirming counsel had explained the application of the guidelines to him and how they could affect his sentence).  And he affirmed that he understood he could face up to 20 years' imprisonment as a result of that calculation.  *Id.* at 16.  He confirmed that he still wished to plead guilty to the charge because he was "in fact guilty" and had "violated the law consistent with the charges made against [him]."  *Id.* at 21-22.  He did so "freely and voluntarily" and with the assistance of satisfactory counsel.  *Id.* at 13 & 23.

    Counsel objected to the attribution of 474.5 grams of cocaine and 590.8 grams of cocaine base to Bruce for his role in the conspiracy, for

use in calculating his recommended sentence, in the Presentence Investigative Report (PSR). *See* PSR Addendum. At sentencing, the Court overruled that objection, noting the drug quantity was a "conservative" estimate based on the evidence of a grand manufacture and distribution scheme, as well as counsel's clarified objection to movant's drug activity which occurred outside the conspiracy being included as "relevant conduct." Doc. 87 at 4-6; *see also* at PSR ¶¶ 27-29, 34, 44-49, 50, 70; PSR Addendum. The Court further adopted the PSR in full, sentencing Bruce to 170 months' imprisonment, at the high end of the guideline range. Doc. 87 at 9; *see* PSR at ¶ 70 (guideline range of 151 to 188 months' incarceration based on his total offense level of 31 and criminal history category of IV).

On appeal, Bruce argued that the district court improperly enhanced his sentence based on drug conduct outside the conspiracy; namely, that prior, uncharged crack-cocaine sales that should not have been considered U.S.S.G. § 1B1.3 "relevant conduct." *United States v. Bruce*, 665 F. App'x 852, 853 (11th Cir. 2016). The Eleventh Circuit concluded that the Court did not err "by including as relevant conduct Bruce's prior sales of crack cocaine" to Anthony Andrews and Leigh

4

Taylor, nor "in determining that the drug sales to Andrews and Taylor [during the fall of 2014] arose out of the same course of conduct as the offense of conviction," *id.* at 856, which concerned activity beginning "in or about March 2015," *see* doc. 1 at 1 (indictment).  Though Bruce's sentence was affirmed, *Bruce*, 665 F. App'x at 858, the Court later granted the Government's motion for a downward departure based on his substantial assistance in the prosecution of others.  *See* docs. 113 & 131 (reducing sentence to 134 months' imprisonment).  Bruce now seeks to bring that number down further, lobbing a variety of claims for relief under 28 U.S.C. § 2255.  Doc. 152.  He has not, however, opposed the Government's motion to dismiss his § 2255 motion.  Doc. 158.

## II.  ANALYSIS

Bruce presents 18 pages of allegations swiping at collateral relief, boiling down to three identifiable claims that: (1) the Court improperly considered prior, uncharged drug activity as "relevant conduct" under U.S.S.G. § 1B1.3, and counsel was ineffective for not objecting to its use at sentencing or on appeal; (2) his sentence was improperly enhanced under U.S.S.G. §§ 1B1.3 and 3B1.1, and counsel failed to investigate and challenge those enhancements or raise them on appeal; and

(3) counsel failed to take several key steps prior to allowing Bruce to plead guilty, in violation of the Sixth Amendment. Doc. 152 at 4-8, 13-18.[2]

### A.    Relevant Conduct under U.S.S.G. 1B1.3

The Eleventh Circuit has already rejected Bruce's argument that the Court erred in considering his prior drug sales to Andrews and Taylor as relevant conduct. *Bruce*, 665 F. App'x at 854-56. This claim is procedurally foreclosed from collateral review. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). And, because his prior drug sales were

---

[2] His voluminous contentions are not exhausted by these three categories, but those that remain lack any discernable legal basis. *See* doc. 152. Those who seek habeas relief cannot simply laundry-list their claims and hope that the court will develop (hence, litigate) them on their behalf. *See, e.g., Bartley v. United States*, 2013 WL 6234694 at *2 (S.D. Ga. Dec. 2, 2013) ("It thus remains [movant]'s burden to plead and prove his claims, including citation to . . . relevant records. He must plead and ultimately show, for example, that the district court erred in handling the claims presented here, and also why the claimed error in those proceedings supports relief within § 2255's parameters."); *Bennett v. United States*, 2013 WL 5406653 at *2 (S.D. Ga. Sept. 25, 2013) ("Merely mentioning a legal doctrine, however, is not enough. Rather, [movant] must show *how* it applies, and he does not."). So, to the extent Bruce hoped the Court would suss through his various allegations and cobble together a viable § 2255 claim on his behalf, it will not do so. *Chavez v. Sec'y Fl. Dep't of Corrs.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (district courts are not "required to mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface in his petition.").

properly considered as relevant conduct by both the district court and by the Court of Appeals, Bruce's contention that counsel was ineffective for failing to argue otherwise (doc. 152 at 4 & 13) -- in addition to being blatantly contradicted by the record (*see* PSR Addendum; doc. 87 at 4-6) -- falls flat. *Diaz-Boyzo v. United States*, 294 F. App'x 558, 560 (11th Cir. 2008) (counsel is not ineffective for failing to pursue a "nonmeritorious issue"); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (same).

### B.   Enhancements under U.S.S.G. §§ 1B1.3 and 3B1.1

Bruce's objection that the Court improperly enhanced his sentence is not cognizable on a § 2255 motion. *See* doc. 152 at 8-16 (protesting enhancements based, *inter alia*, on (1) prior drug conduct for which the Government lacked hard proof (he thinks witness and CI statements were insufficient; rather, wiretapped phone conversations or other audial/visual recordings were necessary to prove it up), (2) drug quantities far greater than the 21.5 grams found on his person when arrested, and (3) a leadership role he thinks the Government couldn't prove). As set forth by the Government:

> Section 2255 does not provide a remedy for every alleged error in conviction and sentencing. . . . [A] district court lacks the

> authority to review the alleged error unless the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014)[.]  "When a federal prisoner, sentenced below the statutory maximum, complains of a sentencing error and does not prove either actual innocence of his crime or the vacatur of a prior conviction, the prisoner cannot satisfy the demanding standard that a sentencing error resulted in a complete miscarriage of justice." *Id.* at 1139.  "Any miscalculation of the guideline range cannot be a complete miscarriage of justice because the guidelines are advisory." *Id.* at 1140.  *See Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (Non-constitutional sentencing guidelines issues are no basis for collateral relief in the absence of a complete miscarriage of justice).

Doc. 158 at 13.  And Bruce's deficient counsel claim does not change this bar.

Contrary to movant's contentions (doc. 152 at 13-14), counsel *did* argue that Andrews' and Taylor's statements regarding his prior drug sales were suspect, *see* PSR Addendum (calling Andrews' statement "manufactured" and Taylor's "flimsy"), and the Court overruled his objections (doc. 87 at 4-6).  *See also Bruce*, 665 F. App'x at 854-56 (affirming conviction).  And any objection to using drug quantities from the dismissed counts of the indictment (doc. 152 at 16) would have been meritless.  Bruce was forewarned that such conduct could be considered in both his plea agreement (doc. 47 at 4) and at his Rule 11 hearing

8

(doc. 86 at 15-16), because such conduct is routinely and properly considered at sentencing. *See, e.g.*, *United States v. Alston*, 895 F.2d 1362, 1372 (11th Cir. 1990) ("As long as the drugs not included in the count(s) of conviction are part of the same course of conduct or common scheme or plan as the offense of conviction, there is nothing improper about applying the Guidelines in this manner"). Finally, given the undisputed facts in the PSR establishing Bruce's leadership role in the conspiracy (*see* PSR ¶¶ 6-26, 37) and Bruce's own admissions,[3] any

---

[3]  Interestingly, Bruce also conclusorily argues that the "Government failed to prove conspiracy" or his directing role in that conspiracy by variously (and inconsistently) admitting both the existence of a conspiracy to possess and to manufacture Schedule II substances and his role as the lead, making agreements for locations to cook and directing activities.  For example, while contending he never "intentionally participat[ed] in a conspiracy" with his co-defendants, Bruce admits to reaching agreements to pay (at least) Timecka Green and Willie Nelson Bruce with money or drugs to use their homes to cook and bag cocaine that he then sold. Doc. 152 at 14-16.  And, while he "never planned or came into an agreement to distribute Cocaine or crack cocaine" with co-defendant Timecka Green, he admits that "Timeka Green charges a fee of Cocaine money to use her Establishment for weighing drug product or Reprossing [*sic*] Cocaine to cooking." *Id*. at 16.

Then, his grand defense to any conspiracy charge: he was just selling directly to cocaine and crack cocaine users.  Point-to-point sales, he reasons, do not constitute a conspiracy to manufacture and to possess with intent to distribute because

> The sales charges in this conspiracy is more like Contraband.  Sales charges were for personal use not for resale. . . . Sales of Cocaine were to drug user. These sales personal use between a buyer and a seller with respect to contraband does not constitute a conspiracy.  During co-defendants trial, defendant testified that co-defendant was aware of defendants action.  Tools and everything else was kept at Co-Defendants home, for drug dealer use, she got paid in money or Cocaine for her own consumption, to party with.

objection to the leadership enhancement would have been meritless. *See* U.S.S.G. § 3B1.1(a) & comment (ns. 1-4) (describing what kinds of evidence a court may consider at sentencing for the leadership enhancement); *Beckles*, 565 F.3d at 843-44 (even in the absence of supporting evidence, the Court may rely on the undisputed facts in the PSR at sentencing). And counsel has no duty to advance nonmeritorious arguments or beat a dead horse sufficient to defendant's liking. *Diaz-Boyzo*, 294 F. App'x at 560; *Winfield*, 960 F.2d at 974.

---

*Id.* at 16-17.

   The Court is at a loss as to how Bruce believes that admitting he parlayed with Ms. Green to use her home for manufacturing and then sold those same substances fails to comprise a conspiracy to possess with intent to distribute cocaine and cocaine base and to manufacture cocaine base.  He literally admits in his motion that they cooked together with full knowledge he would sell the product, and that he paid her a fee of "Cocaine money" to use her home for that purpose.  *Id.* at 16-18.  Pablo Escobar movant may not be, but a multi-level distribution empire is not necessary -- these admissions bear all the hallmarks of the charges leveled against him for conspiracy to possess and to manufacture.

   No matter, as he's bound by his plea and undisputed facts in the PSR admitting the factual underpinnings of the charges against him.  *See* docs. 47 at 1-2, 86 at 21-27, PSR at ¶¶ 32; *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of veracity."); *United States v. Beckles*, 565 F.3d 832, 843-44 (11th Cir. 2009) (even in the absence of supporting evidence, the Court may rely on the undisputed facts in the PSR at sentencing).

   Finally, to the extent movant seems to ask the Court for a minor role sentence reduction (*see* doc. 152 at 18) despite the evidence of his leadership role, the Court has no authority to do so under § 2255.  If that's what he wants, he can seek that relief under 18 U.S.C. § 3852(c) -- not a motion for collateral relief.  *See United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010).

### C. "Sixth Amendment Violation"

In addition to counsel's alleged errors discussed above, Bruce contends that counsel failed to warn him he would be sentenced under the advisory sentencing guidelines (he didn't, *see* doc. 86 at 17) and "misled" him about signing the plea and the sentence he could receive (he didn't, *see id.* at 17-18). Doc. 152 at 15-16. He further argues that counsel should have objected to the indictment on the grounds that co-defendant Gregory Harrington "is not the active person in the indictment" (what effect he believes this would have had is unclear), and failed to "conduct a substantial investigation" or "review discovery" (of what, he doesn't say). *Id.*

Bruce does not, however, flesh out the effect of these alleged errors and does not argue that they rendered his plea unknowing or involuntary.[4] And a defendant who enters a knowing and voluntary

---

[4] Nor could he. Bruce swore under oath that no one, *including his attorney*, had made him any promises not contained in the plea agreement. Doc. 85 at 17-18, 21, 23. He also swore that he fully understood the rights he was giving up by entering a guilty plea and the possible sentence he faced, and that he was fully satisfied with counsel's performance. *Id.* at 10-11, 13, 18-19. Though he may have harbored doubts about just how much the Government could actually prove against him at trial, his solemn declarations before the Court (*see* doc. 85 at 21-22, 26-27 (admitting the factual allegations of the Government's case against him) & 21-23 (affirming his plea was freely and voluntarily given because he was, in fact, guilty)) carry a presumption of verity and rightly constitute a formidable barrier for him to overcome

plea -- *and concedes it is so* -- "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("a defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, [such that] only an attack on the voluntary and knowing nature of the plea can be sustained.").

In other words, movant "cannot litigate any pre-plea, factual-innocence claim masquerading as an ineffective assistance of counsel [ ] claim, since he gave up that right in return for the government's agreement to drop the remaining counts against him." *Moore v. United States*, 2017 WL 750458 at *3 (S.D. Ga. Feb. 24, 2017); *see also Haring v. Prosise*, 462 U.S. 306, 321 (1983) ("[A] counseled plea of guilty is an

---

in these collateral proceedings. *Blackledge*, 431 U.S. at 74; *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014).

Movant falls far short of overcoming that barrier. In fact, his only showing here is buyer's remorse: that he believes that if only counsel had worked harder, things would be different. And a § 2255 action is not designed to account for buyer's remorse. *See, e.g., Nelson v. United States*, 2015 WL 4756975 at * 1 (S.D. Ga. Aug. 11, 2015) (movant "has wasted this Court's time with a 'buyer's remorse' filing. He chose to plead guilty with full knowledge of the consequences. Now he must live with those consequences.").

12

admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case."); *Glaubman v. United States*, 2009 WL 2970495 at * 20 (S.D. Fla. Sep. 16, 2009) (by "entering into the negotiated plea agreement, [movant] was telling his lawyer not to conduct any further investigation and not present at a trial proceeding any legal defenses that he may be entitled to as it relates to his case."). Bruce's pre-plea ineffective assistance of counsel claims are all waived by his guilty plea.

## C. CONCLUSION

Accordingly, Larron Bruce's § 2255 motion should be **DENIED**.[5] For the reasons set forth above, it is plain that he raises no substantial claim of deprivation of a constitutional right. Accordingly, no certificate of appealability should issue. 28 U.S.C. § 2253; Fed. R. App. P. 22(b); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

---

[5] Because his motion is entirely without merit and his contentions are unambiguously contradicted by the record, an evidentiary hearing is unwarranted. *Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) (where the motion "amount[ed] to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied [movant]'s § 2255 motion.").

13

Any motion for leave to appeal *in forma pauperis* therefore is moot.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this ___18th___ day of July, 2017.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA